Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles Linehan (#307439)
Pavithra Rajesh (#323055)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Frederic Haghebaert*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERIC HAGHEBAERT, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| Plaintiff, | |
| v. | |
| TANDY LEATHER FACTORY, INC., JANET CARR, TINA L. CASTILLO, and SHANNON L. GREENE, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiff Frederic Haghebaert ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Tandy Leather Factory, Inc. ("Tandy" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Tandy; and (c) review of other publicly available information concerning Tandy.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Tandy securities between March 7, 2018 and August 15, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Tandy is a specialty retailer that sells leather and leathercraft related items such as quality tools, hardware, accessories, liquids, lace, kits and teaching materials.

3.      On August 13, 2019, after the market closed, the Company disclosed that its Audit Committee was investigating "certain aspects of the Company's methods of valuation and expensing of costs of inventory and related issues regarding the Company's business and operations."

4.      On this news, the Company's share price fell $0.55 per share, or over 10%, over two consecutive trading sessions to close at $4.90 per share on August 15, 2019, on unusually high trading volume.

5.      On August 15, 2019, after the market closed, the Company filed a Form 12b-25 Notification of Late Filing with the SEC, stating that it was unable to timely

file the Company's quarterly report for the period ended June 30, 2019 due to the Audit Committee's investigation.

6.    On this news, the Company's share price fell $0.40 per share, or over 8%, to close at $4.50 per share on August 16, 2019, on unusually high trading volume.

7.    On October 18, 2019, the Company revealed that certain financial statements should no longer be relied upon, citing "misstatements primarily relating to the Company's methods of valuation and expensing of costs of inventory and related issues." It also disclosed that its Chief Financial Officer and Treasurer, Tina Castillo, had resigned from her positions.

8.    On October 21, 2019, the Company disclosed that the errors included: (i) inventory was stated using a methodology that attempted to approximate FIFO; (ii) warehousing and handling expenditures were not capitalized in the first and third quarters but were subsequently corrected on a semi-annual basis; and (iii) warehousing and handling expenditures were classified as operating expenses, resulting in overstatement of operating expenses.

9.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that certain costs of inventory had been improperly valued and expensed; (2) that, as a result, the Company's financial results for certain periods were misstated; (3) that the Company lacked effective internal control over financial reporting; (4) that there was a material weakness in the Company's internal control over financial reporting; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  The Company has offices in this District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

### PARTIES

15.     Plaintiff Frederic Haghebaert, as set forth in the accompanying certification, incorporated by reference herein, purchased Tandy securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.    Defendant Tandy is incorporated under the laws of Delaware with its principal executive offices located in Fort Worth, Texas. Tandy's common stock trades on the NASDAQ exchange under the symbol "TLF."

17.    Defendant Janet Carr ("Carr") has been the Chief Executive Officer ("CEO") of the Company since October 2018.

18.    Defendant Tina L. Castillo ("Castillo") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company.

19.    Defendant Shannon L. Greene ("Greene") was the CEO of the Company from June 2016 to October 2018.

20.    Defendants Carr, Castillo, and Greene (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Tandy is a specialty retailer that sells leather and leathercraft related items such as quality tools, hardware, accessories, liquids, lace, kits and teaching materials.

**Materially False and Misleading**
**Statements Issued During the Class Period**

22.    The Class Period begins on March 7, 2018. On that day, the Company announced its fourth quarter and full year 2017 financial results, reporting full year net sales of $82.3 million and operating income of $7.24 million.

23.    On March 8, 2018, the Company filed its annual report on Form 10-K with the SEC for the period ended December 31, 2017 (the "2017 10-K"), affirming the previously reported financial results. Regarding inventory, the 2017 10-K stated, in relevant part:

> As of December 31, 2017, our investment in inventory increased by $4.1 million from year-end 2016, as we invested in the four new stores that opened/reopened since December 31, 2016 and expanded our product line to support new marketing and merchandising initiatives. Inventory turnover reached an annualized rate of 2.3 times in 2017, decreasing from 2.5 times in 2016. We compute our inventory turns as sales divided by average inventory (calculated as the average of the beginning of the year and end of the year balances). At December 31, 2017, average inventory per store was $176,000, an increase of 9% compared to $161,000 at year-end 2016. This increase is a result of new merchandise in an effort to appeal to an expanded and diverse customer base, as well as stocking higher end leathers and luxury do-it-yourself kits in an effort to appeal to our legacy customer base. In general, our products are not perishable or seasonal and because we don't sell finished goods, our products can have a long shelf life.

24.    Moreover, Defendants Greene and Castillo signed certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud in the 2017 10-K. The report also stated that the Company's internal control over financial reporting was effective as of December 31, 2017.

25.    On May 2, 2018, the Company announced its first quarter 2018 financial results, reporting net sales of $20.3 million and operating income of $1.8 million.

26.    On May 3, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018, affirming the previously reported financial results. It was signed by Defendants Greene and Castillo.

27.    On August 2, 2018, the Company announced its second quarter 2018 financial results, reporting net sales of $19.2 million and operating income of $1.98 million.

28.    On August 3, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, affirming the previously reported financial results. It was signed by Defendants Greene and Castillo.

29.    On November 7, 2018, the Company announced its third quarter 2018 financial results, reporting net sales of $18.9 million and operating income of $0.3 million.

30.    On November 8, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, affirming the previously reported financial results. It was signed by Defendants Carr and Castillo.

31.    On March 6, 2019, the Company announced its fourth quarter and full year 2018 financial results, reporting quarterly sales of $24.7 million and operating loss of $237,000. The Company also disclosed a $1.4 million writedown of inventory for damaged and slow-moving inventory to be disposed or sold through in the first half of 2019.

32.    On March 8, 2019, the Company filed its annual report on Form 10-K with the SEC for the period ended December 31, 2018 (the "2018 10-K"), affirming the previously reported financial results. Regarding inventory, the 2018 10-K stated, in relevant part:

> As of December 31, 2018, our investment in inventory decreased by $3.4 million from year-end 2017. This decrease was due in part to the $1.4 million write down of inventory taken at December 31, 2018 to adequately value our inventory at the lower of cost or net realizable value for damaged, slow-moving, and excess supplies of inventory, but

also in part to a more disciplined approach to managing our inventory turnover as we work to improve our merchandising and assortments. We plan to continue to strengthen our inventory management process with the goal of improving our inventory turnover.

33.    Moreover, Defendants Carr and Castillo signed certifications pursuant to SOX attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud in the 2018 10-K. The report also stated that the Company's internal control over financial reporting was effective as of December 31, 2018.

34.    On May 8, 2019, the Company announced its first quarter 2019 financial results, reporting net sales of $20.8 million and operating income of $1.17 million.

35.    On May 9, 2019, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2019, affirming the previously reported financial results. It was signed by Defendants Carr and Castillo.

36.    The above statements identified in ¶¶20-35 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that certain costs of inventory had been improperly valued and expensed; (2) that, as a result, the Company's financial results for certain periods were misstated; (3) that the Company lacked effective internal control over financial reporting; (4) that there was a material weakness in the Company's internal control over financial reporting; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

37.    On August 13, 2019, after the market closed, the Company disclosed that its Audit Committee was investigating "certain aspects of the Company's

CLASS ACTION COMPLAINT

methods of valuation and expensing of costs of inventory and related issues regarding the Company's business and operations." In a Form 8-K filed with the SEC, the Company stated, in relevant part:

> On July 26, 2019, the Audit Committee of the Board of Directors of Tandy Leather Factory, Inc. (the "Company") commenced an independent investigation of issues that include, but may not be limited to, certain aspects of the Company's methods of valuation and expensing of costs of inventory and related issues regarding the Company's business and operations. The Audit Committee has retained independent legal and accounting advisers to conduct the investigation. The investigation is ongoing. In addition, the Audit Committee directed the Company to evaluate its current policies, procedures, and internal controls associated with such methods of valuation, as well as compliance with, and the effectiveness of, those policies, procedures and internal controls (the "Accounting Policy and Controls Review"). A forensic accounting consultant will assist the Company with this review.

> Because the independent investigation and Accounting Policy and Controls Review referred to above include matters related to accounting for the three months ended June 30, 2019 and previous periods, the Company currently does not anticipate that it will be able to file timely its Quarterly Report on Form 10-Q for the three and six months ended June 30, 2019, which has a due date of August 14, 2019.

> Following the completion of the independent investigation and the Accounting Policy and Controls Review, the timing of which cannot be estimated, the Company will make a determination regarding whether it will need to revise, correct or restate its financial statements for any previous quarter or fiscal year as well as the timing of filing its Quarterly Report on Form 10-Q for the three and six months ended June 30, 2019.

38.    On this news, the Company's share price fell $0.55 per share, or over 10%, over two consecutive trading sessions to close at $4.90 per share on August 15, 2019, on unusually high trading volume.

39.    On August 15, 2019, after the market closed, the Company filed a Form 12b-25 Notification of Late Filing with the SEC, stating that it was unable to timely file the Company's quarterly report for the period ended June 30, 2019 due to the Audit Committee's investigation.

40.    On this news, the Company's share price fell $0.40 per share, or over 8%, to close at $4.50 per share on August 16, 2019, on unusually high trading volume.

41.    On October 18, 2019, the Company revealed that certain financial statements should no longer be relied upon, citing "misstatements primarily relating to the Company's methods of valuation and expensing of costs of inventory and related issues." It also disclosed that its Chief Financial Officer and Treasurer, Tina Castillo, had resigned from her positions.

42.    On October 21, 2019, the Company revealed the Audit Committee's findings in a Form 8-K filed with the SEC that stated, in relevant part:

> On October 14, 2019, as a result of the findings of the Independent Investigation and the Company's ongoing reviews, the Company, in consultation with the Audit Committee, determined that the Company's previously issued financial statements for (i) the years ended December 31, 2018, 2017 and 2016 included in the Company's most recent Annual Report on Form 10-K, (ii) the quarterly and year-to-date periods within fiscal 2017 and 2018 included in the Company's Quarterly Reports on Form 10-Q, and (iii) the three months ended March 31, 2019 included in the Company's Quarterly Report on Form 10-Q, should no longer be relied upon due to material misstatements of one or more of the following categories in all or certain of these periods: the value of inventory and calculation of cost of sales, gross profit, operating expenses, operating income, net income, and earnings per share ("EPS") as described below.  Similarly, related press releases and reports describing the Company's financial results for these periods should also no longer be relied upon.
>
> As disclosed in the Company's periodic reports filed with the Securities and Exchange Commission, the Company has reported that inventory is stated at the lower of cost (first-in, first-out) or net realizable value where cost includes merchandise purchases, the costs to bring the merchandise to its Texas distribution center, warehousing and handling expenditures, and distributing and delivering merchandise to stores. Management has identified the following issues (collectively, the "Inventory Accounting Issues"):
>
> 1) inventory was not correctly stated using a first-in, first-out methodology ("FIFO") but rather was stated using a methodology that attempted to approximate FIFO, resulting in estimated cumulative overstatements.  Management estimates that inventory may be overstated by approximately $1.5 million

to $2.5 million at December 31, 2017, declining over time to approximately $0.3 million to $0.5 million at March 31, 2019, without considering any inventory reserves set up by the Company;

2) warehousing and handling expenditures were not capitalized in the first and third quarters but were subsequently corrected on a semi-annual basis in the second and fourth quarters. In the first and third quarters, when these expenditures were not capitalized, this understated inventory and overstated operating expenses by approximately $0.5 million - $0.6 million and understated net income by approximately $0.3 million - $0.5 million, before considering any currency adjustment. In the second and fourth quarters, when this was corrected, this overstated net income by approximately $0.3 million - $0.5 million. As a result, for the year-to-date periods ended June 30 and December 31, capitalization of the warehousing and handling did not materially impact net income and earnings per share; and

3) warehousing and handling expenditures were classified as operating expenses, resulting in overstatement of operating expenses in all periods. Catch-up capitalizations of these expenditures were made in the quarters ended June 30 and December 31. This resulted in: (1) an offsetting understatement of cost of sales and an overstatement of gross profit and (2) no net impact to net income for the year-to date-periods ended June 30 and December 31. The financial impact of this classification is reflected in paragraph (2) above.

## CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Tandy securities between March 7, 2018 and August 15, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Tandy's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Tandy common stock were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Tandy or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Tandy; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is

impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

49. The market for Tandy's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Tandy's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Tandy's securities relying upon the integrity of the market price of the Company's securities and market information relating to Tandy, and have been damaged thereby.

50. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Tandy's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Tandy's business, operations, and prospects as alleged herein.

51. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Tandy's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant

times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

52.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

53.     During the Class Period, Plaintiff and the Class purchased Tandy's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

54.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Tandy, their control over, and/or receipt and/or modification of Tandy's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Tandy, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

55.     The market for Tandy's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Tandy's securities traded at artificially inflated prices during the Class Period.  On July 16, 2018, the Company's share price closed at a Class Period high of $7.92 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Tandy's securities and market information relating to Tandy, and have been damaged thereby.

56.     During the Class Period, the artificial inflation of Tandy's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Tandy's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Tandy and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

57.     At all relevant times, the market for Tandy's securities was an efficient market for the following reasons, among others:

(a)     Tandy shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Tandy filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Tandy regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Tandy was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

58.    As a result of the foregoing, the market for Tandy's securities promptly digested current information regarding Tandy from all publicly available sources and reflected such information in Tandy's share price. Under these circumstances, all purchasers of Tandy's securities during the Class Period suffered similar injury through their purchase of Tandy's securities at artificially inflated prices and a presumption of reliance applies.

59.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

1

## NO SAFE HARBOR

2    60.    The statutory safe harbor provided for forward-looking statements
3  under certain circumstances does not apply to any of the allegedly false statements
4  pleaded in this Complaint. The statements alleged to be false and misleading herein
5  all relate to then-existing facts and conditions. In addition, to the extent certain of
6  the statements alleged to be false may be characterized as forward looking, they
7  were not identified as "forward-looking statements" when made and there were no
8  meaningful cautionary statements identifying important factors that could cause
9  actual results to differ materially from those in the purportedly forward-looking
10  statements. In the alternative, to the extent that the statutory safe harbor is
11  determined to apply to any forward-looking statements pleaded herein, Defendants
12  are liable for those false forward-looking statements because at the time each of
13  those forward-looking statements was made, the speaker had actual knowledge that
14  the forward-looking statement was materially false or misleading, and/or the
15  forward-looking statement was authorized or approved by an executive officer of
16  Tandy who knew that the statement was false when made.

17

## FIRST CLAIM

18    **Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
19    **Against All Defendants**

20    61.    Plaintiff repeats and re-alleges each and every allegation contained
21  above as if fully set forth herein.

22    62.    During the Class Period, Defendants carried out a plan, scheme and
23  course of conduct which was intended to and, throughout the Class Period, did: (i)
24  deceive the investing public, including Plaintiff and other Class members, as alleged
25  herein; and (ii) cause Plaintiff and other members of the Class to purchase Tandy's
26  securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan
27  and course of conduct, Defendants, and each defendant, took the actions set forth
28  herein.

63.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Tandy's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

64.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Tandy's financial well-being and prospects, as specified herein.

65.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Tandy's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Tandy and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

66.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer

1    and/or director of the Company, was privy to and participated in the creation,
2    development and reporting of the Company's internal budgets, plans, projections
3    and/or reports; (iii) each of these defendants enjoyed significant personal contact
4    and familiarity with the other defendants and was advised of, and had access to,
5    other members of the Company's management team, internal reports and other data
6    and information about the Company's finances, operations, and sales at all relevant
7    times; and (iv) each of these defendants was aware of the Company's dissemination
8    of information to the investing public which they knew and/or recklessly
9    disregarded was materially false and misleading.

10        67.    Defendants had actual knowledge of the misrepresentations and/or
11   omissions of material facts set forth herein, or acted with reckless disregard for the
12   truth in that they failed to ascertain and to disclose such facts, even though such
13   facts were available to them. Such defendants' material misrepresentations and/or
14   omissions were done knowingly or recklessly and for the purpose and effect of
15   concealing Tandy's financial well-being and prospects from the investing public and
16   supporting the artificially inflated price of its securities. As demonstrated by
17   Defendants' overstatements and/or misstatements of the Company's business,
18   operations, financial well-being, and prospects throughout the Class Period,
19   Defendants, if they did not have actual knowledge of the misrepresentations and/or
20   omissions alleged, were reckless in failing to obtain such knowledge by deliberately
21   refraining from taking those steps necessary to discover whether those statements
22   were false or misleading.

23        68.    As a result of the dissemination of the materially false and/or
24   misleading information and/or failure to disclose material facts, as set forth above,
25   the market price of Tandy's securities was artificially inflated during the Class
26   Period.  In ignorance of the fact that market prices of the Company's securities were
27   artificially inflated, and relying directly or indirectly on the false and misleading
28   statements made by Defendants, or upon the integrity of the market in which the

securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Tandy's securities during the Class Period at artificially high prices and were damaged thereby.

69.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Tandy was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Tandy securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

70.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

72.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73.     Individual Defendants acted as controlling persons of Tandy within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false

CLASS ACTION COMPLAINT
19

financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

75.    As set forth above, Tandy and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

    b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

1    c) Awarding Plaintiff and the Class their reasonable costs and expenses

2      incurred in this action, including counsel fees and expert fees; and

3    d) Such other and further relief as the Court may deem just and proper.

4          **<u>JURY TRIAL DEMANDED</u>**

5   Plaintiff hereby demands a trial by jury.

6

7 DATED:  November 7, 2019   GLANCY PRONGAY & MURRAY LLP

8           By: *s/ Lesley F. Portnoy*

9           Lionel Z. Glancy

10          Robert V. Prongay

           Lesley F. Portnoy

11          Charles Linehan

12          Pavithra Rajesh

           1925 Century Park East, Suite 2100

13          Los Angeles, California 90067

14          Telephone:  (310) 201-9150

           Facsimile:  (310) 201-9160

15          Email:  info@glancylaw.com

16

17          *Attorneys for Frederic Haghebaert*

18

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

## TANDY LEATHER FACTORY, INC. SECURITIES LITIGATION

I, Frederic Haghebaert, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I am duly authorized to institute legal action Tandy Leather Factory, Inc. and other defendants.

3.      I did not purchase Tandy Leather Factory, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5.      My transactions in Tandy Leather Factory, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

6.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

7.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

11/7/2019
_____
Date

DocuSigned by:

*Frederic Haghebaert*
06685B5026B64C5...
_____
Frederic Haghebaert

**Frederic Haghebaert's Transactions in Tandy Leather Factory, Inc. (TLF)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 6/14/2019 | Bought | 100 | $5.8000 |