ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR - 3 2020
CLERK, U.S. DISTRICT COURT
By 11:09 MW
Deputy CTJ

FREDERIC HAGHEBAERT, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

TANDY LEATHER FACTORY, INC., JANET CARR, TINA L. CASTILLO, and SHANNON L. GREENE,

Defendants.

Civil Action No. 4:19-cv-01000-A

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff and proposed class representative Frederic Haghebaert ("Plaintiff"),[1] individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Complaint against Defendants,[2] alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters. Plaintiff's information and belief is based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by, and regarding, Tandy Leather Factory, Inc. ("Tandy" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Lead Counsel's investigation into the factual allegations contained herein is continuing, and many of the facts supporting the allegations contained herein are known only to the Defendants or are exclusively within their custody or control. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I. NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Tandy common stock between March 7, 2018 and August 15, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

---

[1] On November 7, 2019, Plaintiff filed the initial complaint in this action. Dkt. No. 1. Thereafter, on January 9, 2020, Plaintiff filed a motion and supporting memorandum seeking to be appointed lead plaintiff. Dkt. Nos. 19-20. Plaintiff's lead plaintiff motion is currently unopposed. *See* Dkt. No. 25.

[2] Defendants are Tandy, Janet Carr ("Carr"), Tina L. Castillo ("Castillo"), and Shannon L. Greene ("Greene").

2. Tandy is a specialty retailer that sells leather and leathercraft related items such as quality tools, hardware, accessories, liquids, lace, kits and teaching materials. According to the Company, it is the world's largest specialty retailer of leather and leathercraft related items based on sales, and offers a wide range of leather, quality tools, hardware, small machines, accessories, liquids, lace, kits and teaching materials.

3. Through a series of disclosures starting in August 2019, the Company revealed that Defendants had engaged in an accounting scheme through which they overstated the Company's profitability. Specifically, the scheme involved the Company treating certain inventory costs, which should have been classified as cost of goods sold, as operating expenses in clear violation of Generally Accepted Accounting Practices ("GAAP") and Tandy's own accounting policies. This misclassification resulted in a consistent overstatement of the Company's gross profit and an overstatement of net income and earnings per share ("EPS") in certain quarters.

4. The Company has admitted this scheme occurred and that Defendant Tina Castillo, who "resigned" from her position as Chief Financial Officer following the uncovering of this scheme, was likely an active participant in it. As the Company has conceded, it entered "Catch-up capitalizations of these expenditures" in the second and fourth quarters to correct the non-capitalization errors of inventory-related costs in the first and third quarters. The fact that Tandy entered entries to correct misclassifications in prior quarters indicates that Defendants were aware of the errors that consistently inflated gross profit and gross margin. Moreover, Defendants were aware that the catch-up entries they recorded in the 2018 second and fourth fiscal quarters caused overstatements (as they admit) in those quarters of operating income, margins, net income, and EPS. The only logical inference from the fact that this happened more

than once (both the improper classification and the later "catch-up" correction of the non-capitalization error) is that these improper accounting treatments were intentional.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, gross profit and gross profit margin were overstated; (3) that the Company recorded "catch-up" entries in the second and fourth 2018 fiscal quarters that inflated operating income and margin, net income and EPS in those quarters; (4) that gross profit margin seemingly improved but was actually overstated due to these misclassifications; (5) that inventory had been reported using a methodology that attempted to approximate a first-in, first-out ("FIFO") methodology; (6) that, as a result, inventory had been overstated.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## II. JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts

charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. Moreover, the Company is headquartered in this Judicial District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## III. PARTIES

11. Plaintiff Frederic Haghebaert, as set forth in his certification previously filed with the Court (Dkt. Nos. 1 & 20 at Exhibit B), incorporated by reference herein, purchased Tandy common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Tandy is incorporated under the laws of Delaware with its principal executive offices located in Fort Worth, Texas. Tandy's common stock trades on the NASDAQ exchange under the symbol "TLF."

13. Defendant Janet Carr ("Carr") has been the Chief Executive Officer ("CEO") of the Company since October 2018.

14. Defendant Tina L. Castillo ("Castillo") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company.

15. Defendant Shannon L. Greene ("Greene") was the CEO of the Company from June 2016 to October 2018.

16. Defendants Carr, Castillo, and Greene (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities

analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Additionally, the Individual Directors frequently spoke to investors and analysts on conference calls. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## IV. STATEMENT OF FACTS

### A. Background On Tandy

17. Tandy is a specialty retailer that sells leather and leathercraft related items such as quality tools, hardware, accessories, liquids, lace, kits and teaching materials. According to the Company, it is the world's largest specialty retailer of leather and leathercraft related items based on sales, and offers a wide range of leather, quality tools, hardware, small machines, accessories, liquids, lace, kits and teaching materials.

18. Tandy claims that it sells its products primarily through company-owned stores and through orders generated from its website, www.tandyleather.com. The Company also manufactures their leather lace and some of their do-it-yourself kits that are sold in its stores and website.

### B. The Struggling Company Focuses On Its Margins

19. Prior to the Class Period, the Company was admittedly not achieving its financial goals. For example, on November 1, 2017, the Company issued a press release in which it

lowered its 2017 financial guidance and referred to its financial results as a "sales miss." As the press release, in relevant part, explained:

> "We had expected to see an improvement in sales during the third quarter, which we experienced in our International segment, but not in our North America segment," commented Shannon Greene, Chief Executive Officer. "Our sales miss was the result of a continuing trend of lower sales to our wholesale and manufacturer customer groups which reported a 9% sales decline."

Moreover, Defendant Greene, on the Company's November 2, 2017 Q3 2017 earnings conference call, further admitted: "As you saw in our earnings release, our results for the third quarter were not we had hoped."

20. In spite of these poor financial results, the Company and its executives continued to tout its margins. For example, on the November 2, 2017 earnings call, Defendant Greene dismissed concerns about elevated inventory levels, saying: "[W]hile the inventory level may seem suspect when sales have been soft, there are few retailers who can boast gross profit margins in excess of 60%. We're very proud of that fact and we will always protect that margin." Similarly, in the November 1, 2017 press release, Defendant Castillo, the Company's then-CFO, explained:[3]

> Despite the sales miss this quarter, ***our gross profit almost matched last year's gross profit as our gross margin continues to show solid improvements from strength in our retail sales while our non-retail sales had some weakness.*** Our operating costs continue to reflect the investments we are making in our new stores and our district manager structure. As expected, these investments have put pressure on short term results, but we're confident that they are providing the platform for us to remain competitive and for driving sustainable growth in traffic and sales.

21. Thereafter, during the Class Period, Tandy continued to tout its margins. For example, on August 2, 2018, Tandy announced its fiscal 2018 second quarter financial results

---

[3] All emphasis added unless otherwise stated.

with a subheading that trumpeted the Company's margins: "Record Gross Margins and Lower Opex Lift Operating Income Margins above 10%; Reports Year to Date EPS of $0.29." This 10% operating margin figure was of particular importance because the Company had announced at the start of the Class Period, just a quarter earlier, that the Company's 2020 financial targets were "$87 - $90 million in net sales and greater than 10% operating income margins."

### C. Defendants' Scheme To Inflate Tandy's Profits And Margins

22. Throughout the Class Period, Defendants engaged in a scheme through which they consistently overstated the Company's gross profit and margins. The Company has admitted that this scheme occurred and that Defendant Castillo, who "resigned" from her position following the uncovering of this scheme, was an active participant in it.

23. According to the Company's "significant accounting policies" there are two distinct expense categories—costs of goods sold and operating expenses:

> Cost of goods sold includes inbound freight and duty charges from vendors to our central warehouse, freight and handling charges to move merchandise from our central warehouse to our stores, and manufacturing overhead, as appropriate.
>
> Operating expenses include all selling, general and administrative costs including wages and related employee expenses (payroll taxes, health benefits, savings plans, etc.), advertising, outbound freight charges (to ship merchandise to customers), rent, and utilities.[4]

24. Tandy further explained: "As disclosed in the Company's periodic reports filed with the Securities and Exchange Commission, the Company has reported that inventory is stated at the lower of cost (first-in, first-out) or net realizable value where cost includes merchandise

---

[4] *See* Tandy's March 2, 2018 Annual Report filed with the SEC on Form 10-K at 17.

purchases, the costs to bring the merchandise to its Texas distribution center, ***warehousing and handling expenditures,*** and distributing and delivering merchandise to stores."[5]

25. These accounting policies were in accordance with Generally Accepted Accounting Practices ("GAAP"). Defendants, however, failed to follow their own stated accounting practices or those mandated by GAAP.

26. Instead, as the Company admitted, "warehousing and handling expenditures were classified as operating expenses," instead of cost of sales.

27. Per GAAP, inventory-related costs must be capitalized and reflected on the income statement as costs of goods sold, rather than expensed in the period in which they are incurred. As the below Tandy chart demonstrates,[6] the amount of costs attributed to goods sold (or Cost of Sales in the chart), such as inventories, directly impacts a company's gross profit because gross profit equals net sales minus the cost of sales:

**TANDY LEATHER FACTORY, INC.**
**CONSOLIDATED STATEMENTS OF INCOME**
**FOR THE THREE AND SIX MONTHS ENDED JUNE 30,**

| | THREE MONTHS | |
|---|---|---|
| | **2018** | **2017** |
| NET SALES | $ 19,177,767 | $ 19,280,770 |
| COST OF SALES | 6,059,325 | 6,385,236 |
| GROSS PROFIT | 13,118,442 | 12,895,534 |
| OPERATING EXPENSES | 11,136,961 | 11,240,097 |
| INCOME FROM OPERATIONS | 1,981,481 | 1,655,437 |

---

[5] *See* Tandy's Form 8-K dated October 18, 2019 that was filed with the SEC on October 21, 2019.

[6] *See* Tandy's Quarterly Report dated August 3, 2019 that was filed with the SEC on Form 10-Q on August 3, 2019, at 3.

28. Therefore, misclassifying costs that should have been capitalized to inventory as operating expenses increases a company's gross profit. As the Company has admitted, this is exactly what Tandy did. This misclassification of these costs resulted in an overstatement of the Company's gross profit and therefore, an overstatement of its gross margin.

29. Similarly, the Company further admitted that:

> [W]arehousing and handling expenditures were not capitalized in the first and third quarters but were subsequently corrected on a semi-annual basis in the second and fourth quarters. In the first and third quarters, when these expenditures were not capitalized, this understated inventory and overstated operating expenses by approximately $0.5 million - $0.6 million and understated net income by approximately $0.3 million - $0.5 million, before considering any currency adjustment In the second and fourth quarters, when this was corrected, this overstated net income by approximately $0.3 million - $0.5 million.

30. Furthermore, the Company admits that this practice was intentional and made with the full knowledge of Tandy's financial accounting department and Defendant Castillo. As the Company explained, not only did Tandy "categorize warehousing and handling expenditures [] as operating expenses," but also it entered "Catch-up capitalizations of these expenditures" in the subsequent quarters. Additionally, Tandy admitted that "warehousing and handling expenditures were not capitalized in the first and third quarters but were subsequently corrected on a semi-annual basis in the second and fourth quarters."[7] Because operating expenses in second and fourth quarters were reduced by costs that had been incurred and expensed in prior quarters, Defendants knew or should have known that the catch-up entries overstated operating income, operating margin, net income, and EPS in these quarters.

31. These "Catch-up" entries and the "Corrections" in Tandy's books confirm that Defendants were aware, or at a minimum were incredibly reckless in not knowing, that the initial

[7] *See* Tandy's Form 8-K dated October 18, 2019 that was filed with the SEC on October 21, 2019.

classifications were improper. The fact that this happened more than once (both the improper classification and then inputting a correction to compensate for the non-capitalization) further demonstrates these improper accounting treatments were intentional. Defendant Castillo, the Company's CFO, would have known that Tandy was engaged in this repeated scheme since she would have had to have approve the catch-up entries.

32. In sum, the Company has admitted that cost of sales was understated and gross profit and margin was overstated throughout the Class Period and that net income was overstated during certain quarters of the Class Period. Tandy admits that it was aware that this was occurring at all time.

**D. The Company Admits That It Lacked Effective Internal Controls**

33. While the Company has admitted that it expects to restate its financial results, it has yet to do so nearly five months after disclosing the accounting scheme. Though the Company has not issued its restatement, it has admitted that Tandy had material weaknesses in its internal controls.

34. As the Company explained, "the Audit Committee directed the Company to evaluate its policies, procedures, and internal controls associated with its methods of inventory valuation, as well as compliance with, and the effectiveness of, those policies, procedures and internal controls (the 'Accounting Policy and Controls Review')." Even though this review is purportedly ongoing and the Company has not published the final results of the review, the Company has already concluded that it "did not maintain effective controls over the accuracy and presentation of the accounting for inventory, cost of sales, gross profit, operating expenses, operating income, net income and EPS."

## V. DEFENDANTS' KNOWINGLY AND/OR RECKLESSLY MADE FALSE AND/OR MISLEADING STATEMENTS REGARDING THE COMPANY'S FINANCIAL RESULTS

35. The Class Period begins on March 7, 2018. On that day, the Company announced its fourth quarter and full year 2017 financial results. Therein, Tandy reported the following financial metrics:

- Q4'17 gross profit margin improved to 62.4% compared to prior year's 60.2%.
- Q4'17 operating income was approximately $3,199,000 and diluted EPS was $0.18.

* * *

- FY'17 gross profit margin improved to 63.3% compared to prior year's 62.4%.
- FY'17 operating income was approximately $7,242,000 and diluted EPS was $0.48.

36. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

37. On March 8, 2018, Tandy held a conference call in connection with these results. During the call, Defendant Greene repeated that "gross margins also improved, contributing to a 5.4% increase to gross profit, which allowed us to be at the top-end of our fourth quarter guidance range." She also stated that "consolidated operating expenses this year have increased 8.4% compared to a year ago due to the investments in our new stores and our district manager program."

38. These statements were materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

39. Also on March 8, 2018, the Company filed its annual report on Form 10-K with the SEC for the period ended December 31, 2017 (the "2017 10-K"), affirming the previously reported financial results. Regarding gross profit, the 2017 10-K stated, in relevant part:

> **Gross Profit**
>
> On a consolidated basis, gross profit margins were 63.3% in 2017, 62.4% in 2016, and 61.9% in 2015. In general, our gross profit margin fluctuates based on the mix of customers we serve, the mix of products we sell, and our ability to source products globally. Our negotiations with suppliers for lower pricing are an on-going process, for which we have varying degrees of success. Sales to retail customers tend to produce higher gross margins than sales to non-retail customers due to the difference in pricing levels. Therefore, as retail sales increase in the overall sales mix, higher gross margins tend to follow, which is the main reason our gross profit margins have shown steady improvement over the last two years. Finally, there is also significant fluctuation in gross margins between the various merchandise categories we offer. As a result, our gross margins can also vary depending on the mix of products sold during any given time period.

40. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

41. Moreover, as to the accounting of inventory, the 2017 10-K stated, in relevant part:

> **Inventory.** Inventory is stated at the lower of cost or net realizable value and is accounted for on the "first in, first out" method. This means that sales of inventory treat the oldest item of identical inventory as being the first sold. In addition, we regularly reduce the value of our inventory for slow-moving or obsolete inventory. This reduction is based on our review of items on hand compared to their estimated future demand. If actual future demand is less

favorable than what we project, additional write-downs may be necessary. Goods shipped to us are recorded as inventory owned by us when the risk of loss shifts to us from the supplier.

42. This statement was materially false and/or misleading because it failed to disclose: (1) that inventory had been reported using a methodology that attempted to approximate FIFO; and (2) that, as a result, inventory had been overstated.

43. Additionally, the 2017 10-K stated that one of the Company's significant accounting policies was as follows:

- *Expense categories*

Cost of goods sold includes inbound freight and duty charges from vendors to our central warehouse, freight and handling charges to move merchandise from our central warehouse to our stores, and manufacturing overhead, as appropriate.

Operating expenses include all selling, general and administrative costs including wages and related employee expenses (payroll taxes, health benefits, savings plans, etc.), advertising, outbound freight charges (to ship merchandise to customers), rent, and utilities.

44. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; and (2) that, as a result, operating expenses was overstated.

45. On May 2, 2018, the Company announced its first quarter 2018 financial results in a press release that reported:

- Gross profit margin improved to 63.3% compared to prior year's 61.0%.
- Operating income increased 1.8% to approximately $1.8 million from $1.7 million in the prior year.

46. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

47. On May 3, 2018, Tandy held a conference call in connection with these results. During the call, Defendant Castillo stated, with respect to margins:

> Consolidated gross profit margin for the quarter was 63.3%, increasing from 61% in last year's first quarter.
>
> In North America, our gross profit margin improved from 61.1% to 63.3% due to mix of customers, with more retail than nonretail, and due to product mix, with more profitable items sold than in the prior year. Our International segment gross profit margin increased from 58% last year to 63.5% this year, primarily due to some pricing increases that we implemented last fall.
>
> Consolidated operating expenses this quarter increased 5% or $525,000 compared to a year ago.

48. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

49. Also on May 3, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018 (the "1Q 2018 10-Q"), affirming the previously reported financial results. Regarding gross profit in the North America segment, the report stated: "Gross profit as a percentage of sales increased from 61.1% in the first quarter of 2017 to 63.3% in the first quarter of 2018, due to customer mix and an increase in sales of higher margin products compared to last year's first quarter. Operating expenses increased 4.6% compared to last year's comparable period." Similarly, the report stated that gross profit margin in the International segment "increased from 58.1% in 2017 to 63.5% in 2018, primarily due to price changes that were implemented in Fall 2017."

50. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses;

(2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

51. On August 2, 2018, Tandy announced its second quarter 2018 financial results in a press release that stated, in relevant part:

> - Q2'18 gross profit margin improved to 68.4% compared to prior year's 66.9%.
>
> - Q2'18 operating income was approximately $1,981,000, a 19.7% improvement over prior year.
>
> * * *
>
> - YTD'18 gross profit margin improved to 65.8% compared to prior year's 63.9%.
>
> - YTD'18 operating income was approximately $3,750,000, a 10.5% improvement over prior year.

52. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, gross profit and gross profit margin were overstated; and (3) that the Company recorded "catch-up" entries that inflated operating income and margin, net income and EPS.

53. On August 3, 2018, Tandy held a conference call in connection with the second quarter 2018 financial results. During the call, defendant Greene touted that "gross margins continue to remain strong." Similarly, defendant Castillo stated:

> Consolidated gross profit margin for the quarter was 68.4%, improving from 66.9% in last year's second quarter. The improvement was the result of the continued shift in customers with more retail than non-retail sales as well as product mix with more higher-margin products sold.
>
> In addition, for international, this segment's gross profit margin improved due to pricing increases that we implemented last fall. Consolidated operating expenses this quarter decreased $103,000 or 0.9% compared to a year ago as we reduced

> our advertising and marketing spend, partially offset by higher personnel and occupancy costs.
>
> Income from operations was $2 million for the quarter or an increase of $0.3 million from the comparable quarter in 2017. ***The increase was primarily attributable to the improvement in gross profit and cost controls.***

54. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, gross profit and gross profit margin were overstated; and (3) that the Company recorded "catch-up" entries that inflated operating income and margin, net income and EPS.

55. During the call, an investor asked whether the Company was pursuing a different strategy that led to the improved gross margins. In response, non-defendant Mark Angus stated, "it basically is just a lot of the product mix." The investor asked whether the gross margin was "sustainable to a certain degree going forward" and Angus replied: "***I would like to hope so, but I doubt it very seriously. I think it will be more in line with last year's margin going into the fall.*** We have a lot of large promotional type things with Black Friday and Super Saturday and going into that fall season."

56. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, gross profit and gross profit margin were overstated; and (3) that the Company recorded "catch-up" entries that inflated operating income and margin, net income and EPS.

57. Also on August 3, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018 (the "2Q 2018 10-Q"), affirming the previously reported financial results. Tandy also reported that gross profit margin improved in the North

America segment "from 67.6% in the second quarter of 2017 to 68.5% in the second quarter of 2018, due to an increase in sales of higher margin products compared to last year's second quarter and customer mix with more retail than non-retail sales" and in the International segment "from 52.3% in 2017 to 66.5% in 2018, primarily due to the recent price changes and shift in customer mix."

58. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, gross profit and gross profit margin were overstated; and (3) that the Company recorded "catch-up" entries that inflated operating income and margin, net income and EPS.

59. On November 7, 2018, Tandy announced its third quarter 2018 financial results in a press release, reporting:

> • Q3'18 operating income was $0.3 million compared to prior year's $0.6 million, or a decrease of $0.3 million. Gross profit increased $0.2 million, while operating expenses increased $0.5 million.
>
> * * *
>
> Consolidated gross profit margin for the year to date was 64.8%, compared to 63.7% for the year to date 2017.

60. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit and gross profit margin were overstated.

61. On November 8, 2018, Tandy held a conference call in connection with the third quarter 2018 financial results. During the call, defendant Castillo stated: "while sales and gross

profit improved, our operating expenses grew faster. As a result, our operating income is not where we want it to be."

62. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

63. As to gross margin, defendant Castillo stated during the call:

> ***Consolidated gross profit margin for the quarter was 62.7%, down from 63.3% in last year's third quarter.*** This decline was the result of product mix with more lower-margin products ***sold*** as well as more aggressive pricing promotions, partially offset by the continued shift in customer mix with more retail sales than business.

Also on November 8, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018 (the "3Q 2018 10-Q"), affirming the previously reported financial results. Regarding gross profit in the North America segment, Tandy stated: "Gross profit as a percentage of sales increased from 64.0% in the first nine months of 2017 to 64.9% in the first nine months of 2018, due to an increase in sales of higher margin products and the continued shift in more retail than non-retail sales."

64. These statements were materially false and/or misleading because they failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit and gross profit margin were overstated.

65. On March 6, 2019, the Company announced its fourth quarter and full year 2018 financial results in a press release that stated:

- Q4'18 gross profit margin decreased to 57.4% (after adjusting for a $1.4 million write down for damaged and slow-moving items) compared to prior year's 62.4%.

> - Q4'18 operating loss was approximately $237,000 due to higher costs associated with its recent change in management, exit costs associated with store closures, and impairment charges for underperforming stores.
>
> * * *
>
> Consolidated net loss for the quarter ended December 31, 2018 was $0.6 million compared to $1.7 million consolidated net income for the fourth quarter of 2017. Fully diluted (loss) earnings per share ("EPS") for the fourth quarter of 2018 were ($0.07), compared to $0.18 in last year's fourth quarter.

66. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, gross profit and gross profit margin were overstated; and (3) that the Company recorded "catch-up" entries that inflated operating income and margin, net income and EPS.

67. On March 7, 2019, Tandy held a conference call in connection with these financial results. During the call, defendant Castillo stated: "Consolidated gross profit margin for 2018 was 60.9%, down from 63.3% last year."

68. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, gross profit and gross profit margin were overstated; and (3) that the Company recorded "catch-up" entries that inflated operating income and margin, net income and EPS.

69. On March 8, 2019, the Company filed its annual report on Form 10-K with the SEC for the period ended December 31, 2018 (the "2018 10-K"), affirming the previously reported financial results. Regarding gross profit, the 2018 10-K stated, in relevant part:

> **Gross Profit**
>
> On a consolidated basis, gross profit margins were 60.9% in 2018, 63.3% in 2017, and 62.4% in 2016. In 2018, our gross profit was negatively impacted by a $1.4 million write down of our inventory as we work to improve our brand proposition and evaluate our product, promotion and pricing. Specifically, the write down of

our inventory was taken to adequately value our inventory at the lower of cost or net realizable value for damaged, slow-moving, and excess supplies of inventory where we expect to either dispose of the inventory or take pricing initiatives to promote and sell through slow-moving and excess supplies of inventory. Our recorded write-down of inventory could differ materially from our initial estimates based on future customer demand or economic conditions.

Our gross profit margin fluctuates based on the mix of customers we serve, the mix of products we sell, and our ability to source products globally. Our negotiations with suppliers for lower pricing are an on-going process, for which we have varying degrees of success. Sales to retail customers tend to produce higher gross margins than sales to non-retail customers due to the difference in pricing levels. Therefore, as retail sales increase in the overall sales mix, higher gross margins tend to follow, which is the main reason our gross profit margins have shown steady improvement (in 2018, excluding the write-down, our gross profit margin would have been 62.6%). Finally, there is also significant fluctuation in gross margins between the various merchandise categories we offer. As a result, our gross margins can also vary depending on the mix of products sold during any given time period.

70. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, gross profit and gross profit margin were overstated; and (3) that the Company recorded "catch-up" entries that inflated operating income and margin, net income and EPS.

71. On May 8, 2019, the Company announced its first quarter 2019 financial results in a press release, reporting:

Gross profit declined 3.1% or $0.4 million to $12.4 million, compared to prior year's $12.8 million. This decline was due to product mix, as well as promotions and clearance activities related to our Australia store closure at the end of February 2019.

Operating costs increased $0.2 million compared to prior year, primarily due to $0.4 million of non-recurring store closure cost related to the three stores closed during the first quarter of 2019 and $0.2 million of higher non-cash share-based compensation expense. These increases were offset by cost savings from our UK store that closed in the third quarter of 2018, lower print and postage costs, as well as the pause in store relocations.

72. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

73. On May 9, 2019, Tandy held a conference call in connection with its first quarter 2019 financial results. During the call, defendant Castillo stated: "[G]ross profits decline[d] and combined with an overall net increase in operating expenses, our operating earnings declined nearly 34%. Approximately half of the gross profit decline was due to these promotional activities while the other half was due to customer and product mix and higher freight costs."

74. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

75. Moreover, Tandy's operating earnings declined. Defendant Castillo stated:

> ***As a result of the $400,000 gross profit decline and the $200,000 net increase in operating expenses, our income from operations declined $600,000 to $1,169,000 compared to 2018, $1,769,000.*** This 33.9% decrease in operating earnings, while not unexpected, was of course significant.

76. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

77. On May 10, 2019, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2019 (the "1Q 2019 10-Q"), affirming the previously reported financial results. Regarding gross profit, the Company stated:

**Gross Profit**

> Our gross margin for the quarter declined from 63.3% in the first quarter of 2018 to 59.9% for the first quarter of 2019, resulting in a decrease in gross profit of $392,157. This decrease was primarily due to product mix (for example, while sales of the new sewing machine grew our top line, its gross profit margin is lower than the average), higher shipping and freight costs, as well as promotions and steeper discounts on clearance items and for the store that we closed in Australia.

78. This statement was materially false and/or misleading because it failed to disclose: (1) that warehousing and handling expenditures were classified as operating expenses; (2) that, as a result, operating expenses was overstated; (3) and that, as such, gross profit was overstated.

## VI. DEFENDANTS' KNOWINGLY AND/OR RECKLESSLY MADE FALSE AND/OR MISLEADING SOX CERTIFICATIONS

79. On March 7, 2018, in connection with the Company's 2017 Annual Report filed with the SEC on Form 10-K, defendants Greene and Castillo signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of the financial statements. Specifically, defendants Greene and Castillo attested:

> 1. I have reviewed this annual report on Form 10-K of Tandy Leather Factory, Inc.;
>
> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> > a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision,

> to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>
> b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;
>
> c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and
>
> d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and
>
> 5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):
>
> a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and
>
> b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

80. On May 3, 2018, in connection with the Company's Quarterly Report for its 2018 fiscal first quarter that was filed with the SEC on Form 10-Q, defendants Greene and Castillo filed SOX certifications substantially similar to that identified above.

81. On August 3, 2018, in connection with the Company's Quarterly Report for its 2018 fiscal second quarter that was filed with the SEC on Form 10-Q, defendants Greene and Castillo filed SOX certifications substantially similar to that identified above.

82. On November 8, 2018, in connection with the Company's Quarterly Report for its 2018 fiscal third quarter that was filed with the SEC on Form 10-Q, defendants Carr and Castillo filed SOX certifications substantially similar to that identified above.

83. On March 8, 2019, in connection with Company's 2018 Annual Report filed with the SEC on Form 10-K, defendants Carr and Castillo filed SOX certifications substantially similar to that identified above.

84. On May 10, 2019, in connection with the Company's Quarterly Report for its 2019 fiscal first quarter that was filed with the SEC on Form 10-Q, defendants Carr and Castillo filed SOX certifications substantially similar to that identified above.

85. As Defendants have admitted, the above statements identified in ¶¶ 79-84 were materially false and/or misleading, and failed to disclose: (1) that Tandy did not maintain effective controls over the accuracy and presentation of the accounting for inventory, cost of sales, gross profit, operating expenses, operating income, net income and EPS; and (2) that, as a result, Tandy's quarterly financial statements in 2018 and 2019 were materially inaccurate.

## VII. DEFENDANTS' KNOWINGLY AND/OR RECKLESSLY MADE FALSE AND/OR MISLEADING STATEMENTS REGARDING THE COMPANY'S INTERNAL CONTROLS

86. Regarding internal control over financial reporting, the 2017 10-K stated, in relevant part:

> **Management's Annual Report on Internal Control over Financial Reporting**
>
> Our management is responsible for establishing and maintaining adequate internal control over our financial reporting. Our internal control system was designed to provide reasonable assurance to our management and our board of directors regarding the reliability of the preparation and fair presentation of our published financial statements.
>
> All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined effective can provide only reasonable assurance with respect to financial statement preparation and presentation.

> We have assessed the effectiveness of our internal controls over financial reporting as of December 31, 2017. In making this assessment, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commissions (COSO) in *Internal Control – Integrated Framework*. Based on our assessment, we believe that, as of December 31, 2017, our internal control over financial reporting is effective based on that criteria.
>
> This annual report does not include an attestation report of our registered public accounting firm regarding internal control over financial reporting. Management's report is not subject to attestation by our registered public accounting firm pursuant to rules of the Securities and Exchange Commission that permit us to provide only management's report in this Annual Report on Form 10-K.
>
> **Changes in internal control**
>
> There was no change in our internal control over financial reporting that occurred during the fiscal quarter ended December 31, 2017 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

87. In the 1Q 2018 10-Q filed on May 3, 2018, Tandy stated that "[t]here have been no changes in our internal control over financial reporting during the fiscal quarter ended March 31, 2018 that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

88. In the 2Q 2018 10-Q filed on August 3, 2018, Tandy stated that "[t]here have been no changes in our internal control over financial reporting during the fiscal quarter ended June 30, 2018 that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

89. In the 3Q 2018 10-Q filed on November 8, 2018, Tandy stated: "There have been no changes in our internal control over financial reporting during the fiscal quarter ended September 30, 2018 that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

90. The 2018 10-K filed on March 8, 2019 stated:

**Management's Annual Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over our financial reporting. Our internal control system was designed to provide reasonable assurance to our management and our board of directors regarding the reliability of the preparation and fair presentation of our published financial statements.

All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined effective can provide only reasonable assurance with respect to financial statement preparation and presentation.

We have assessed the effectiveness of our internal controls over financial reporting as of December 31, 2018. In making this assessment, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commissions (COSO) in *Internal Control – Integrated Framework*. Based on our assessment, we believe that, as of December 31, 2018, our internal control over financial reporting is effective based on that criteria.

This annual report does not include an attestation report of our registered public accounting firm regarding internal control over financial reporting. Management's report is not subject to attestation by our registered public accounting firm pursuant to rules of the Securities and Exchange Commission that permit us to provide only management's report in this Annual Report on Form 10-K.

**Changes in internal control**

There was no change in our internal control over financial reporting that occurred during the fiscal quarter ended December 31, 2018 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

91. In the 1Q 2019 10-Q filed on May 10, 2019, Tandy stated: "There have been no changes in our internal control over financial reporting during the fiscal quarter ended March 31, 2019 that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

92. As Defendants have admitted, the above statements identified in ¶¶ 86-91 were materially false and/or misleading, and failed to disclose that Tandy did not maintain effective controls over the accuracy and presentation of the accounting for inventory, cost of sales, gross profit, operating expenses, operating income, net income and EPS.

## VIII. LOSS CAUSATION AND DEFENDANTS' STATEMENTS ISSUED AT THE END OF THE CLASS PERIOD

93. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic losses suffered by Plaintiff and the Class.

94. During the Class Period, as a result of the open, well-developed, and efficient market for Tandy's stock, the prices of Tandy's stock fell when the misrepresentations alleged herein, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed to investors and the artificial inflation was removed over time from the price of Tandy's stock.

95. Defendants' wrongful conduct, alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class. Defendants' misrepresentations and omissions caused and maintained the artificial inflation in Tandy's stock price throughout the Class Period until Defendants began to disclose the truth regarding the Company's financial condition to the market.

96. On August 13, 2019, after the market closed, the Company disclosed that its Audit Committee was investigating "certain aspects of the Company's methods of valuation and expensing of costs of inventory and related issues regarding the Company's business and operations." In a Form 8-K filed with the SEC, the Company stated, in relevant part:

> On July 26, 2019, the Audit Committee of the Board of Directors of Tandy Leather Factory, Inc. (the "Company") commenced an independent investigation of issues that include, but may not be limited to, certain aspects of the Company's methods of valuation and expensing of costs of inventory and related issues regarding the Company's business and operations. The Audit Committee has retained independent legal and accounting advisers to conduct the investigation. The investigation is ongoing. In addition, the Audit Committee directed the Company to evaluate its current policies, procedures, and internal controls associated with such methods of valuation, as well as compliance with, and the effectiveness of, those policies, procedures and internal controls (the "Accounting Policy and Controls Review"). A forensic accounting consultant will assist the Company with this review.

> Because the independent investigation and Accounting Policy and Controls Review referred to above include matters related to accounting for the three months ended June 30, 2019 and previous periods, the Company currently does not anticipate that it will be able to file timely its Quarterly Report on Form 10-Q for the three and six months ended June 30, 2019, which has a due date of August 14, 2019.
>
> Following the completion of the independent investigation and the Accounting Policy and Controls Review, the timing of which cannot be estimated, the Company will make a determination regarding whether it will need to revise, correct or restate its financial statements for any previous quarter or fiscal year as well as the timing of filing its Quarterly Report on Form 10-Q for the three and six months ended June 30, 2019.

97. On this news, the Company's share price fell $0.55 per share, or over 10%, over two consecutive trading sessions to close at $4.90 per share on August 15, 2019, on unusually high trading volume.

98. On August 15, 2019, after the market closed, the Company filed a Form 12b-25 Notification of Late Filing with the SEC, stating that it was unable to timely file the Company's quarterly report for the period ended June 30, 2019 due to the Audit Committee's investigation. As the Form 12b-25, in relevant part, stated:

> Tandy Leather Factory, Inc. (the "Company") has determined that it is unable to file, within the prescribed time period, its Quarterly Report on Form 10-Q for the three- and six-months ended June 30, 2019 (the "Form 10-Q") due to the reasons described below, which cannot be eliminated by the Company without unreasonable effort or expense.
>
> As disclosed by the Company in Item 8.01 of its Current Report on Form 8-K furnished to the U.S. Securities and Exchange Commission on August 13, 2019, the Audit Committee of the Board of Directors of the Company has commenced an independent investigation of issues that include, but may not be limited to, certain aspects of the Company's methods of valuation and expensing of costs of inventory and related issues regarding the Company's business and operations. The Audit Committee has retained independent legal and accounting advisers to conduct the investigation. The investigation is ongoing. In addition, the Audit Committee directed the Company to evaluate its current policies, procedures, and internal controls associated with such methods of valuation, as well as compliance with, and the effectiveness of, those policies, procedures and internal controls (the "Accounting Policy and Controls Review"). A forensic accounting consultant will assist the Company with this review.

99. On this news, the Company's share price fell $0.40 per share, or over 8%, to close at $4.50 per share on August 16, 2019, on unusually high trading volume.

100. On October 18, 2019, the Company revealed in a press release that was filed with the SEC that certain financial statements should no longer be relied upon, citing "misstatements primarily relating to the Company's methods of valuation and expensing of costs of inventory and related issues." It also disclosed that its Chief Financial Officer and Treasurer, Tina Castillo, had resigned from her positions. As the press release, in relevant part, stated:

> FORT WORTH, TEXAS - Tandy Leather Factory, Inc., (NASDAQ: TLF) the world's largest specialty retailer of leather and leathercraft related items, announced today that its previously issued financial statements included in the Company's most recent Annual Report on Form 10-K and Quarterly Reports on Form 10-Q should no longer be relied upon, as a result of misstatements primarily relating to the Company's methods of valuation and expensing of costs of inventory and related issues, which were first identified by management as a result of a deeper analysis of legacy systems and practices that have been in place for many years. The Company is continuing its analysis and quantification of these issues and is now in the process of addressing them by replacing these systems and making improvements to its accounting practices. Detailed information on the nature of the issues and the preliminary estimated magnitude of the financial statement impacts, as well as the Company's ongoing analysis and remediation efforts, can be found in a Current Report on Form 8-K filed with the SEC today. The Company expects to restate the financial statements noted above as soon as practicable and expects that it will not be able to file its Quarterly Reports on Form 10-Q for the quarters and year-to-date periods ended June 30, 2019 and September 30, 2019 until after the conclusion of its restatement process.
>
> None of the accounting issues are expected to impact reported sales or cash for any periods, including prior periods. Operating cash flows for the year to date period ended June 30, 2019 were $5.6 million, with ending cash and U.S. Treasury balances of $20.3 million at June 30, 2019. At September 30, 2019, cash and U.S. Treasury balances increased $2.3 million to $22.6 million. Further, the Company had no outstanding debt at June 30, 2019 or September 30, 2019.
>
> * * *
>
> The Company also announced today that Tina Castillo, Tandy's Chief Financial Officer and Treasurer, has notified the Company that she will be stepping down from those positions effective today. A search for a new CFO will be launched immediately, and Ms. Castillo has agreed to stay on in another role through the end of February 2020 to provide transition. An experienced Interim CFO has been appointed effective October 21, 2019 and will serve until a permanent replacement is appointed. Additional information on these changes can also be found in the Form 8-K filed with the SEC today.

101. On October 21, 2019, the Company revealed the Audit Committee's findings in a Form 8-K filed with the SEC that stated, in relevant part:

On October 14, 2019, as a result of the findings of the Independent Investigation and the Company's ongoing reviews, the Company, in consultation with the Audit Committee, determined that the Company's previously issued financial statements for (i) the years ended December 31, 2018, 2017 and 2016 included in the Company's most recent Annual Report on Form 10-K, (ii) the quarterly and year-to-date periods within fiscal 2017 and 2018 included in the Company's Quarterly Reports on Form 10-Q, and (iii) the three months ended March 31, 2019 included in the Company's Quarterly Report on Form 10-Q, should no longer be relied upon due to material misstatements of one or more of the following categories in all or certain of these periods: the value of inventory and calculation of cost of sales, gross profit, operating expenses, operating income, net income, and earnings per share ("EPS") as described below. Similarly, related press releases and reports describing the Company's financial results for these periods should also no longer be relied upon.

As disclosed in the Company's periodic reports filed with the Securities and Exchange Commission, the Company has reported that inventory is stated at the lower of cost (first-in, first-out) or net realizable value where cost includes merchandise purchases, the costs to bring the merchandise to its Texas distribution center, warehousing and handling expenditures, and distributing and delivering merchandise to stores. Management has identified the following issues (collectively, the "Inventory Accounting Issues"):

1) inventory was not correctly stated using a first-in, first-out methodology ("FIFO") but rather was stated using a methodology that attempted to approximate FIFO, resulting in estimated cumulative overstatements. Management estimates that inventory may be overstated by approximately $1.5 million to $2.5 million at December 31, 2017, declining over time to approximately $0.3 million to $0.5 million at March 31, 2019, without considering any inventory reserves set up by the Company;

2) warehousing and handling expenditures were not capitalized in the first and third quarters but were subsequently corrected on a semi-annual basis in the second and fourth quarters. In the first and third quarters, when these expenditures were not capitalized, this understated inventory and overstated operating expenses by approximately $0.5 million - $0.6 million and understated net income by approximately $0.3 million - $0.5 million, before considering any currency adjustment. In the second and fourth quarters, when this was corrected, this overstated net income by approximately $0.3 million - $0.5 million. As a result, for the year-to-date periods ended June 30 and December 31, capitalization of the warehousing and handling did not materially impact net income and earnings per share; and

3) warehousing and handling expenditures were classified as operating expenses, resulting in overstatement of operating expenses in all periods. Catch-up capitalizations of these expenditures were made in the quarters

ended June 30 and December 31. This resulted in: (1) an offsetting understatement of cost of sales and an overstatement of gross profit and (2) no net impact to net income for the year-to date-periods ended June 30 and December 31. The financial impact of this classification is reflected in paragraph (2) above.

None of the Inventory Accounting Issues are expected to impact reported sales or cash for any periods, including prior periods. The Inventory Accounting Issues were first identified by management as a result of a deeper analysis of legacy systems and practices that have been in place for many years (and which the Company is now working to replace). While management believes the Inventory Accounting Issues will result in material adjustments to certain of the financial periods identified above, the quantification of these adjustments remains ongoing. The Company is also continuing to analyze and quantify the impact of the Inventory Accounting Issues for financial statements in periods prior to 2017 and evaluating appropriate steps to address such impacts.

Additionally, as previously announced in the Prior Form 8-K, the Audit Committee directed the Company to evaluate its policies, procedures, and internal controls associated with its methods of inventory valuation, as well as compliance with, and the effectiveness of, those policies, procedures and internal controls (the "Accounting Policy and Controls Review"). An accounting consultant is assisting the Company with this review. This review is ongoing.

As a result of the preliminary findings of the Accounting Policy and Controls Review, management has re-evaluated its prior conclusions on the effectiveness of the Company's (i) internal control over financial reporting as of December 31, 2018 and (ii) its disclosure controls and procedures as of the end of each quarter within 2018 and the quarter ended March 31, 2019. In connection therewith, management determined that the Company did not maintain effective controls over the accuracy and presentation of the accounting for inventory, cost of sales, gross profit, operating expenses, operating income, net income and EPS. The Company will amend its disclosures pertaining to its evaluation of such controls and procedures to report one or more material weaknesses in those controls and procedures and will report that its internal control over financial reporting and its disclosure controls and procedures were not effective. The Company expects to implement remedial measures to correct these material weaknesses as soon as practicable. The Company has retained an accounting consultant to assist it in the remediation process.

The Company expects to restate the financial statements noted above as soon as practicable and expects that it will not be able to file its Quarterly Reports on Form 10-Q for the quarters and year-to-date periods ended June 30, 2019 and September 30, 2019 until after the conclusion of its restatement process and the Accounting Policy and Controls Review. The Company is unable to predict with certainty when the restatement process and Accounting Policy and Controls Review will be completed.

102. During the Class Period, Plaintiff and the Class purchased Tandy stock at artificially inflated prices and were damaged thereby. The price of the Company's stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## IX. ADDITIONAL SCIENTER ALLEGATIONS

103. The Individual Defendants acted with scienter by virtue of: (a) their receipt of information reflecting the accounting scheme, including that that the Company recorded "catch-up" entries in the second and fourth 2018 fiscal quarters that inflated operating income and margin, net income and EPS in those quarters; (b) their receipt of information reflecting that the warehousing and handling expenditures were classified as operating expenses; (c) their intentional issuance of materially false or misleading financial statements; and/or (d) their ultimate responsibility to ensure the accuracy of such statements and their reckless failure to do so. The Individual Defendants knew or were deliberately reckless in disregarding the materially false or misleading nature of the information they caused to be disseminated to the investing public.

104. The Individual Defendants also knew or were deliberately reckless in disregarding that the material misrepresentations and omissions contained in the Company's public statements would adversely affect the integrity of the market for the Company's securities and would cause the price of such securities to be artificially inflated. The Individual Defendants acted knowingly or in such a deliberately reckless manner as to constitute a fraud upon Plaintiff and the Class.

**A. The Truth Was Only Revealed After Long-Standing Executives Of Tandy Were Removed From Their Positions**

105. On October 2, 2018, the Company announced that it's CEO Shannon Greene and its President Mark Angus had both "resigned" from Tandy. Mark Angus had been with the Company since 1985. He had served as an operational Vice President from June 1993 through May 2008 when he was appointed Senior Vice President. On June 7, 2016, Mark Angus was appointed President after already serving in the position in an interim basis. On that same day, Defendant Greene was named CEO after serving in the position on an interim basis as well. The CEO appointment was on top of her existing roles as CFO and Treasurer. Ms. Greene had worked in various positions of the Company since 1997.

106. The most logical inference from the fact that the accounting scheme, which had been going on in some capacity for years (as demonstrated by the three years of financial statements at issue), was only uncovered and publicly reported after this mass departure of long-serving Tandy management during the Class Period is that Tandy's management, including the Individual Defendants, had knowledge of, or were reckless in not knowing, of the accounting scheme. This is further supported by the fact that Defendant Castillo, the Company's CFO since February 2017, also "resigned" just after the scheme was revealed.[8]

**B. Tandy Insiders Sold Substantial Amounts Of Stock During The Class Period**

107. As discussed above, Shannon Greene and Mark Angus were longstanding Tandy executives. As executives, neither Mr. Angus nor Ms. Greene were frequent sellers of their Tandy stock. In fact, according to the Company's filings, it appears that Ms. Greene had not

---

[8] In fact, the Company disclosed Defendant Castillo's resignation in the same October 18, 2019 SEC filing in which the Company announced that the market should not rely on its previously issued financial statements.

sold a single share of Tandy stock since 2013 and that Mr. Angus had not sold a share since he became an officer of the Company.

108. However, within days of their "resignations" both of them sold substantial amounts of their Tandy holdings. In a series of transactions on October 5, October 10 and November 20, 2018, Defendant Greene sold more than 38,000 shares of Tandy stock for $254,797 in open market transactions. Likewise, Mr. Angus sold more than 13,000 shares of Tandy stock from November 12 through November 16, 2018 for proceeds of $91,528. It can be reasonably inferred from this immediate selling right after their removal from the Company that these executives were concerned that the accounting fraud would come to light under the new management.

### C. Defendants Castillo And Greene Knew That The Accounting Scheme Was Improper Due To Their Extensive Accounting Backgrounds And Knowledge

109. Both Defendants Castillo and Greene had extensive accounting experience that would have necessitated them knowing that the accounting scheme was improper. Prior to being appointed CFO, Castillo had already served as Tandy's Controller since February 2016. Prior to that, Ms. Castillo has served in various senior financial leadership roles since 2009, including as Chief Financial Officer at another publicly traded company based in Fort Worth. Moreover, Ms. Castillo began her career in 1994 in the audit practice group at Ernst & Young LLP and received her Bachelor in Business Administration degree, as well as her Master in Professional Accounting degree, from the University of Texas. She is also a Texas certified public accountant.

110. Likewise, Defendant Greene had been the Chief Financial Officer of Tandy for sixteen years when she was appointed interim CEO and then CEO in 2016. Before that, Greene had served as an Assistant Controller and a Controller at Tandy. Moreover, Defendant Green

also had a Bachelor's Degree in accounting from New Mexico State University and is a certified public accountant.

111. It is implausible that these two executives, who have accounting degrees and are CPAs with decades of accounting and auditing experience at Tandy and other publicly traded companies, were unaware of GAAP principles that applied to Tandy's business and the Company's own stated accounting policies. Moreover, it is simply unbelievable that these executives would have not been aware that engaging in the accounting scheme, where the Company was entering "catch-up" entries into its financial ledgers to counteract other misclassifications and these undisclosed entries had the impact of inflating operating and net income for certain quarters, was improper. As such, the only logical inference is that these defendants had knowledge, or were extremely reckless in not knowing, that the Company should not have been, among other things, classifying warehousing and handling expenditures as operating expenses rather than as cost of sales, which necessitated "Catch-up" transactions, thereby inflating operating income and net income in second and fourth quarters.

112. Additionally, the fact that these two executives had been the Company's CFOs for close to the last twenty years and the Company has stated that investors should only not rely on the Company's financial statements for the last three fiscal years demonstrates that this practice was only done in recent years. Certainly, the Company had warehousing and handling expenditures before the last three fiscal years. Therefore, the most logical inference was that the Company only started engaging in this scheme recently and with Defendants Castillo and Greene's knowledge.

## X. CLASS ACTION ALLEGATIONS

113. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that

purchased or otherwise acquired Tandy common stock between March 7, 2018 and August 15, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

114. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tandy's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. This is because as of May 7, 2019, Tandy had 8,934,024 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Tandy or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

115. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

116. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

117. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Tandy; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

118. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## XI. UNDISCLOSED ADVERSE FACTS

119. The market for Tandy's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Tandy's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Tandy's common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Tandy, and have been damaged thereby.

120. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Tandy's common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially

false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Tandy's business, operations, and prospects as alleged herein.

121. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Tandy's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## XII. APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

122. The market for Tandy's common stock was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Tandy's common stock traded at artificially inflated prices during the Class Period. On July 16, 2018, the Company's share price closed at a Class Period high of $7.92 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's common stock relying upon the integrity of the market price of Tandy's common stock and market information relating to Tandy, and have been damaged thereby.

123. During the Class Period, the artificial inflation of Tandy's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Tandy's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Tandy and its business, operations, and prospects, thus causing the price of the Company's common stock to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at such artificially inflated prices, and each of them has been damaged as a result.

124. At all relevant times, the market for Tandy's common stock was an efficient market for the following reasons, among others:

(a) Tandy shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Tandy filed periodic public reports with the SEC and/or the NASDAQ;

(c) Tandy regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Tandy was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and

certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

125. As a result of the foregoing, the market for Tandy's common stock promptly digested current information regarding Tandy from all publicly available sources and reflected such information in Tandy's share price. Under these circumstances, all purchasers of Tandy's common stock during the Class Period suffered similar injury through their purchase of Tandy's common stock at artificially inflated prices and a presumption of reliance applies.

126. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## XIII. NO SAFE HARBOR

127. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Tandy who knew that the statement was false when made.

## XIV. COUNTS

### FIRST COUNT

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

128. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

129. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Tandy's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

130. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Tandy's common stock in violation of Section

10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

131. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Tandy's financial well-being and prospects, as specified herein.

132. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Tandy's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Tandy and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

133. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans,

projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

134. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Tandy's financial well-being and prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

135. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Tandy's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or in the absence of material adverse

information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Tandy's common stock during the Class Period at artificially high prices and were damaged thereby.

136. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Tandy was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Tandy common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

137. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

138. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND COUNT

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

139. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

140. Individual Defendants acted as controlling persons of Tandy within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's

operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

141. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

142. As set forth above, Tandy and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## XV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d) Such other and further relief as the Court may deem just and proper.

## XVI. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 3, 2020

**STECKLER GRESHAM COCHRAN PLLC**

By: ______________________________
R. Dean Gresham
Texas State Bar No. 24027215
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
Email: dean@sgc.law

**GLANCY PRONGAY & MURRAY LLP**
Charles H. Linehan (admitted *pro hac vice*)
Pavithra Rajesh (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com
prajesh@glancylaw.com

*Counsel for Plaintiff Frederic Haghebaert*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

R. Dean Gresham